**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NORMAN D. CHESTER, JR.,**

        **CASE NO. 2:10-CV-00402**

    **Petitioner,**        **JUDGE SMITH**

        **MAGISTRATE JUDGE ABEL**

    **v.**

**DAVID BOBBY, WARDEN,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner Norman D. Chester, Jr., a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the magistrate judge on the Petition, Respondent's *Return of Writ,* Petitioner's *Traverse,* and the exhibits of the parties. For the reasons that follow, the magistrate judge **RECOMMENDS** that the petition for writ of habeas corpus be **DENIED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Norman D. Chester, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a jury verdict, of aggravated burglary without specification, in violation of R.C. 2911.11, which is a felony of the first degree; felonious assault without specification, in violation of R.C. 2903.11, which is a felony of the second degree; two counts of kidnapping without specification, in violation of R.C. 2905.01, which are felonies of the first degree; aggravated robbery without specification, in violation of R.C. 2911.01, which is a felony of the first degree; robbery without specification, in violation of R.C. 2911.02, which is a felony of the second degree; and robbery without specification, in violation of R.C. 2911.02, which is a felony of the third degree.

1

Appellant met the victim, Jelisa James, in a Columbus psychiatric hospital, and the two became friends. After both appellant and James were released, they started dating, and they eventually lived together. The relationship was turbulent, and James moved in with her mother, Norma Hudson. Appellant persistently telephoned James, sent her angry and threatening e-mails, and showed up at her home uninvited.

On September 19, 2006, Hudson arrived home, where appellant was waiting inside. Appellant stabbed Hudson in the face with a knife and bound her in the bedroom. Appellant told Hudson he was going to drown James and cut off James' head, and said he had already filled the bathtub with water. James eventually arrived at the home, at which point appellant threatened her with a knife. Appellant made James tie her mother to a chair in the bedroom, and then appellant made James take off all of her clothes before tying her to another chair. Appellant made Hudson use her credit cards to wire him money, and, the following morning, appellant took Hudson and James to several grocery stores and a Western Union store to retrieve money, but the money had already been transferred. Appellant had James and Hudson drop him off at a house, and James and Hudson went to the hospital and eventually contacted police.

Appellant was subsequently apprehended and questioned by police, at which time he made a statement. Appellant was indicted for aggravated burglary, felonious assault, two counts of kidnapping, aggravated robbery, and two counts of robbery. Appellant filed a motion to suppress statements made to the police, which the trial court denied after a hearing on November 27, 2007. After the motion hearing, the case proceeded to a jury trial. The jury found appellant guilty on all counts as charged in the indictment but without the specifications. On December 3, 2007, for purposes of sentencing, the trial court merged the robbery counts into the aggravated robbery count, and sentenced appellant to maximum, consecutive prison sentences on the five counts, for a total sentence of 48 years. Appellant appeals the judgment of the trial court, asserting the following three assignments of error and one supplemental assignment of error, which we will refer to as his fourth assignment of error:

2

> [I.] THE TRIAL COURT ERRED BY REQUIRING THE DEFENDNAT TO APPEAR BEFORE THE JURY WHILE SHACKLED IN ORDER TO DELIVER HIS OWN TESTIMONY[.]
>
> [II.] THE TRIAL COURT ERRED IN OVERRULING DEFENDANT–APPELLANT'S MOTION TO SUPPRESS HIS ORAL STATEMENTS[.]
>
> [III.] DEFENDANT–APPELLANT WAS NOT AFFORDED THE EFFECTIVE ASSISTANCE OF COU [N]SEL[.]
>
> [IV.] THE TRIAL COURT ERRED BY SENTENCING DEFENDANT–APPELLANT UPON COUNTS 5, 6 AND 7 WHEN THOSE COUNTS ALLEGED NO MENTAL ELEMENT.

*State v. Chester,* No. 08AP-1, 2008 WL 5265860. at *1-2 (Ohio App. 10th Dist. Dec. 18, 2008). On December 18, 2008, the appellate court overruled Petitioner's first, second, and third assignments of error, sustained in part and overruled in part his fourth assignment of error, affirming in part and reversing in part the judgment of the state trial court and remanding the case to the trial court.[1]  The trial court nullified Petitioner's robbery conviction pursuant to the remand of the Ohio Court of Appeals; however, the trial court previously had merged Petitioner's convictions on count seven with count five, so Petitioner's aggregate sentence remained the same.  *See Exhibit 15 to Return of Writ.*  On April 22, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Chester*, 121 Ohio St.3d 1454 (2009).

On March 18, 2009, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  On May 19, 2009, the appellate court denied Petitioner's Rule 26(B) application.  Petitioner did not file an appeal to the Ohio Supreme Court.

---

[1]  The appellate court reversed Petitioner's robbery conviction, because the indictment failed to include the required *mens rea* of recklessness.

3

On May 5, 2010, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that he is being held in violation of the Constitution of the United States based upon the following grounds:

1.   Denial of effective assistance of counsel.

Trial counsel was ineffective on (5) five grounds.  Trial counsel met with prosecutor and judge outside of Petitioner's presence, and asserted that Petitioner may cause outburst at trial, this resulted in Petitioner being hand cuffed and shackled without a hearing throughout trial. . . . Trial counsel allowed trial court to depose the testimony of private investigator Bob Britt.  Trial counsel failed to subpoena lead detective Eric Wooten.  Trial counsel brought in co-counsel whom Petitioner had never met (Karen Phipps). . . co-counsel cross examined the State's star witness, without having prior knowledge of the case. . . . Co-counsel's performance was lackluster and severely damaged Petitioner's chances of acquittal.  Trial counsel did nothing to ensure jury did not see the extra restraints.

2.   Trial court abused its discretion in ordering Petitioner to wear hand-cuffs and shackles while in presence of jury without holding a hearing.

Petitioner was ordered to wear both handcuffs and shackles throughout the trial without ever having caused any problems or having a hearing to determine the necessity of the extra restraints.  Appellate court used harmless error analysis but it is clear [that] due process was violated when no hearing was granted prior to this action being granted. . . .

3.   Conviction obtained by use of coerced confession.

Police tactics were successful in psychologically overbearing Petitioner's will.  Petitioner was reticent from the beginning of the interview, stating he would not speak or sign anything until interviewer spoke with a homicide detective Petitioner personally knew.  Petitioner continued to say no even after *Miranda* warning was given.

4.   Conviction obtained by use of defective indictment.

Petitioner was indicted and later found guilty of counts (6) six, and (7) seven, robbery 2911.02 O.R.C., which allowed no mens

> rea element of a crime.  The error is structural and was raised for the first time on direct appeal.    Appellate court reversed conviction on counts (6) and (7) and remanded those two counts back to common pleas court.  Appellant would argue that the defect affected the entire framework. . . being an error of the trial process itself.  The instructions to the jury also failed to include a mens rea which should [have] resulted in a mistrial, or complete reversal on the appellate level.

It is the position of the Respondent that Petitioner's claims are without merit or procedurally defaulted.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.; Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier*, 477 U.S. 478,485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the

four-part analysis of *Maupin* ). Specifically, the United States Court of Appeals for the Sixth

Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.... Second, the court must decide
> whether the state courts actually enforced the state procedural
> sanction.... Third, the court must decide whether the state
> procedural forfeiture is an adequate and independent state ground
> on which the state can rely to foreclose review of a federal
> constitutional claim.

*Maupin*, 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a

state procedural rule was not complied with and that the rule [has] an adequate and independent

state ground, then the petitioner' "may still obtain review of his claims on the merits if he

establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced

by the alleged constitutional error. *Id*. 'Cause' under this test "must be something external to the

petitioner, something that cannot fairly be attributed to him[;] ... some factor external to the

defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S.

at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for

review at the appellate level or failure to appeal at all. *Id.* at 750.

Nevertheless, " '[i]n appropriate cases' the principles of comity and finality that inform

the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally

unjust incarceration.'" *Murray,* 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135

(1982)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless

receive a review of their claims if they can demonstrate that a court's refusal to consider a claim

would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott*

*v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice

exception requires a showing that "in light of the new evidence, no juror, acting reasonably,

would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Here, Petitioner never argued to the state appellate court that his entire trial was defective based on allegedly improper charging documents, as he asserts in claim four. He argued only that his convictions on counts five, six and seven were invalid, because the charging document failed to include the required *mens rea.* Petitioner also asserts in claim four that he was denied a fair trial based on improper jury instructions which failed to include the appropriate *mens rea*, or intent, for the crimes charged. Again, Petitioner never raised this claim in the state appellate court. Likewise, as to Petitioner's claim of ineffective assistance of counsel, as raised in claim one, the only claim Petitioner presented to the state appellate court is that based on his attorney's failure properly to examine prosecution witnesses. He never presented the remainder of his allegations of ineffective assistance of trial counsel to the state appellate court. Further, Petitioner may now no longer present any of these claims to the state courts under Ohio's doctrine of *res judicata.* *See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The Magistrate Judge finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by

a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112, 443 N.E.2d 169; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Magistrate Judge concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the Magistrate Judge is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner has waived claim four, and claim one, with the exception of his claim that he was denied effective assistance of counsel because his attorneys failed properly to cross examine prosecution witnesses. He may still obtain review of these claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed

> to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Here, the ineffective assistance of counsel cannot constitute cause for Petitioner's procedural default, as such claim likewise is waived based on Petitioner's failure to present this claim to the Ohio Supreme Court. Petitioner may now no longer do so, as Ohio does not permit delayed appeals in Rule 26(B) proceedings. Ohio Supreme Court Rule of Practice 7.01(4)(c).

Beyond the four-part *Maupin* analysis, a habeas court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support

> his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir. 2005). Petitioner has failed to meet this standard

here.

## MERITS

**Claim One:**

In claim one, Petitioner asserts that he was denied effective assistance of counsel because

his attorney failed to conduct an adequate cross examination of the prosecution witnesses.  The

state appellate court rejected this claim, reasoning in relevant part as follows:

> Appellant argues. . . that he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

> An attorney properly licensed in Ohio is presumed competent. *State v. Lott* (1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. In demonstrating

prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

***

Appellant . . . argues that his attorney was ineffective when he failed to aggressively cross-examine the alleged victims. However, appellant's argument, in this respect, is comprised only of this single conclusory assertion without any further explanation of any error. Appellant's failure to provide any substantive argument in support of his position is exceedingly detrimental to his proposition. Notwithstanding, our review of the record fails to reveal ineffectiveness. Although the victims were cross-examined for ten and sixty-three transcript pages each, effectiveness of cross-examination cannot be judged by the length of cross-examination. *State v. Robinson*, Lucas App. No. L–06–1182, 2008–Ohio–3498, at ¶ 223 (the argument that the effectiveness of cross-examination should be judged by the number of transcript pages that the cross-examination consumes is one that simply cannot succeed). Importantly, the extent and scope of cross-examination clearly falls within the ambit of trial strategy, and debatable trial tactics do not constitute a lack of effective assistance of counsel. *State v. Dixon*, 101 Ohio St.3d 328, 805 N.E.2d 1042, 2004–Ohio–1585, at ¶ 54; *see, also, State v. Downard*, Wood App. No. WD–05–086, 2007–Ohio–2144, at ¶ 56 (the length of counsel's various cross-examinations is within the realm of trial strategy and not for the appellate court to second-guess). Without any further detail of the precise nature of appellant's complaint, we cannot find his trial counsel was ineffective in his cross-examination of the victims. Therefore, appellant's third assignment of error is overruled.

*State v. Chester*, 2008 WL 5265860, at *9-10.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Further, a

federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant statecourt decision applied clearly established federal law erroneously or incorrectly." *Id*., at 411, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. Rather, that application must be "objectively unreasonable." Id., at 409, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( *per curiam* ).

*Renico v. Lett*, 550 U.S. 766, ——, 130 S.Ct. 1855,1862 (2010) (footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of [the Supreme Court's]" cases. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146

> L.Ed.2d 389, (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, —— U.S. ——, 131 S.Ct. 10 (Nov. 1, 2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ——U.S. ——, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To establish the second prong of the *Strickland* test, *i.e.,* prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate the ineffective assistance of counsel, should the court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id.,* at 697.

As noted by the state appellate court, Petitioner fails to identify the specific manner in which he contends that defense counsel conducted constitutionally unreasonable cross-examination of prosecution witnesses, or how he was prejudiced thereby. The magistrate judge can find no evidence in the record demonstrating that Petitioner's cross-examinations of the victims was so deficient as to deny him the effective assistance of counsel. Under these circumstances, the magistrate judge cannot conclude that Petitioner has established he is entitled to habeas corpus relief.

Claim one is without merit.

**Claim Two:**

In claim two, Petitioner asserts he was denied a fair trial because the trial court improperly required him to wear handcuffs and shackles during trial.  The state appellate court rejected this claim, reasoning in relevant part as follows:

> Appellant argues in his first assignment of error that the trial court erred when it required him to appear before the jury while shackled during his testimony at trial. It is well-established that no defendant should be tried while shackled, except as a last resort. *Illinois v. Allen* (1970), 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353. The presence of restraints tends to erode the presumption of innocence that the justice system attaches to every defendant. *State v. Franklin,* 97 Ohio St.3d 1, 776 N.E.2d 26, 2002–Ohio–5304, at ¶ 79. This court has explained that the placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence. *State v. Frazier,* Hamilton App. No. C–030571, 2004–Ohio–4108, at ¶ 3. The decision as to whether to shackle a criminal defendant during the trial lies within the sound discretion of the trial court, and the

record should reflect factors upon which the trial court exercised its discretion. *State v. Morgan* (1992), 84 Ohio App.3d 229, 616 N.E.2d 941.

However, a defendant does not have an absolute right to be free from shackles in the courtroom. *State v. Blackmon* (Feb. 14, 1995), Franklin App. No. 94APA05–773. In some circumstances, shackling is necessary for the safe, reasonable, and orderly progress of the trial. *Morgan*, at 232, 616 N.E.2d 941, citing *State v. Carter* (1977), 53 Ohio App.2d 125, 132, 372 N.E.2d 622. This court has noted that shackling is an "extreme measure." *State v. Cunningham* (July 25, 1991), Franklin App. No. 90AP–427. Notwithstanding, the Ohio Supreme Court has stated that it is widely accepted that a prisoner may be shackled where there is a danger of violence or escape. *Franklin,* at ¶ 79. *See, also, Carter* (defendant in criminal case has right to appear at trial without shackles or other physical restraint except when the trial court, in exercise of sound discretion, determines such restraint is necessary for safe and orderly progress of trial); *State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568 (prisoner may be shackled where there is danger of violence or escape).

Furthermore, because it is the responsibility of the trial court to insure that an accused receives a fair and impartial trial, it is a matter of due process that the trial court must exercise its discretion in such matters. *Cunningham, supra*. The trial court is in a position to consider the prisoner's actions both inside and outside the courtroom, as well as his demeanor while court is in session. *Franklin*, at ¶ 79. However, the trial court must actually exercise its own discretion and not simply defer to security personnel without inquiring into the specific circumstances upon which officials' security concerns are based. *State v. Nickelson* (Sept. 27, 1994), Franklin App. No. 94APA04–582. The record should reflect factors upon which the trial court exercised its discretion. *State v. Jones,* Franklin App. No. 02AP–1390, 2003–Ohio–5994, at ¶ 24, citing *Morgan,* at 232, 616 N.E.2d 941. Where the surrounding facts and circumstances illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it. *Jones, supra,* at ¶ 25, citing *Franklin, supra*, at ¶ 82.

In the present case, at the commencement of trial, appellant's counsel had the following dialogue with the court outside the presence of the jury:

MR. IRELAND: * * * Your Honor, if I may make a further motion as to my client. He is presently both shackled with the feet and hands. If we could have the handcuffs removed before the jury hears.

THE COURT: Based on the advice from the sheriff's department for the protection of the attorneys, the witnesses, the Court, anyone else in the courtroom, it's necessary to have both the hands and the ankles shackled, so that is denied.

MR. IRELAND: If I may just a moment, Your Honor, preserve the moment.

Your Honor, having consulted further with my client, he assures me that he has no intent to harm anybody here. It's noteworthy, in fact, the alleged victims in this case are not present. I feel that the handcuffs would potentially be prejudicial for the jury to see him in the handcuffs and assume, based on that fact, he's a violent person and/or—

THE COURT: With all the charges in this case and what I've heard, I'm not going to reconsider it. No, nothing is coming off.


** *

THE COURT: We will take care and make sure the jury doesn't see them unless he wants them to.

As indicated above, a trial court must actually exercise its own discretion and not simply defer to security personnel without inquiring into the specific circumstances upon which officials' security concerns are based, and the record should reflect factors upon which the trial court exercised its discretion. *See Nickelson* and *Jones, supra*. Here, the trial court cited that the sheriff's department had advised it that appellant should be shackled for the protection of the attorneys, the witnesses, and the court, and the trial court explained that shackling appellant was necessary based upon the charges in the case.

However, we believe there exists a legitimate question as to whether the trial court exercised its own discretion. There was nothing in the record to indicate that appellant's demeanor in the court prompted any security concerns. The trial court also did not inquire as to the specific reasons why security personnel believed shackling was necessary. Further, the trial court provided limited

reasoning as to why it found a compelling need to keep appellant shackled. Although the trial court noted that the crimes with which appellant was charged included violent crimes and the underlying facts demonstrated appellant may be capable of violent conduct, these reasons are generic and non-specific and could apply to a substantial number of defendants at trial.

Nevertheless, even if the trial court lacked the requisite independent discretion and failed to exercise the proper degree of reflection, we find any error was harmless. Shackling a defendant without exercising the required discretion is an error that does not require automatic reversal. *State v. Cardinal*, Franklin App. No. 05AP–992, 2006–Ohio–5088, at ¶ 33, citing *State v. Adkins* (May 24, 1989), Scioto App. No. 1720; *State v. Tyree (*July 15, 1994), Fulton App. No. 94FU000007. A constitutional error can be held harmless if it was harmless beyond a reasonable doubt. *Id.*, citing *State v. Conway,* 108 Ohio St.3d 214, 842 N.E.2d 996, 2006–Ohio–791, at ¶ 78, *citing Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

In the present case, the error was harmless on three bases. First, there is no evidence that the jury ever saw appellant wearing the shackles. The transcript of the hearing is devoid of any reference that would indicate the jury knew appellant was wearing shackles. *See State v. Wightman*, Fayette App. No. CA2006–12–045, 2008–Ohio95, at ¶ 12 (no evidence in the record indicating that the jury could see, saw or had any knowledge of the shackles worn by appellant). The trial court also specifically indicated that it was going to make certain the jury did not see the shackles. *See id.* (the trial court took care to prevent the jury from seeing the shackles). In addition, contrary to appellant's suggestion, it is apparent from the trial transcript that appellant was already seated in the witness stand every time the jury entered the courtroom, and there is nothing in the record to suggest that appellant left the stand after his testimony while the jury was still in the courtroom. Therefore, it also appears that appellant never had to walk shackled to and from the witness stand in front of the jurors.

Second, as in *Cardinal*, in which this court found harmless error in shackling the defendant due to the defendant's admissions, in the present case, appellant's admissions made the case against him so strong, we find the error here was harmless beyond a reasonable doubt and, therefore, did not deprive appellant of due process. At trial, appellant admitted he broke Hudson's window, stabbed Hudson in the face, made James tie up her mother, tied up James, made Hudson transfer money to him, and sent James threatening e-

17

mails. Coupled with the testimony of Hudson, James, and the other state's witnesses, the evidence against appellant was overwhelming.

Third, appellant does not claim that he was unable to effectively communicate with his attorney with regard to his legal representation. The record is devoid of any suggestion that the shackles prevented appellant from conferring with his counsel with respect to his own defense. *Wightman, supra*, at ¶ 12 (the record did not show that the shackles inhibited defendant's ability to consult with his attorney or assist in his defense). Appellant also does not claim the restraints were an impediment to his ability to follow the proceedings and take an active interest in the presentation of his case. *See State v. Leonard*, 157 Ohio App.3d 653, 813 N.E.2d 50, 2004–Ohio–3323, at ¶ 46 (discussing the use of stun belts), citing *United States v. Durham* (C.A.11, 2002), 287 F.3d 1297, 1305–1306. Moreover, there was no evidence of any increase in anxiety that might have materially impaired and prejudicially affected appellant's ability and right to testify on his own behalf. *Id.* (discussing the use of stun belts), citing *People v. Mar* (2002), 28 Cal.4th 1201, 1224, 124 Cal.Rptr.2d 161, 52 P.3d 95; *Wightman, supra*, at ¶ 12 (the record did not show that the shackles caused appellant any nervousness or other psychological distress). Therefore, we find that, even if the trial court erred in keeping appellant shackled during the trial, the error was harmless beyond a reasonable doubt.

Appellant urges us to view any error with regard to shackling as a structural error and, thus, incapable of being harmless. Structural errors are constitutional defects that defy analysis by "harmless error" standards because they affect the framework within which the trial proceeds, rather than simply being an error in the trial process itself. *Arizona v. Fulminante* (1991), 499 U.S. 279, 309–310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Such errors permeate the entire conduct of the trial from beginning to end so that the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. *Rose v. Clark* (1986), 478 U.S. 570, 577–578, 106 S.Ct. 3101, 92 L.Ed.2d 460. A structural error mandates a finding of *per se* prejudice. *State v. Fisher*, 99 Ohio St.3d 127, 789 N.E.2d 222, 2003–Ohio–2761, at ¶ 9.

However, only federal constitutional errors can be structural and then only if the Supreme Court has labeled them so. *See Gray v. State* (Tex.Crim.App.2005), 159 S.W.3d 95, 97. The United States Supreme Court has recognized structural errors only in a very limited class of cases, including the complete denial of counsel, a

18

biased trial judge, racial discrimination in the selection of a grand jury, the denial of self-representation at trial, the denial of a public trial, and a jury instruction that defined reasonable doubt as grave uncertainty. *See Johnson v. United States* (1997), 520 U.S. 461, 468–469, 117 S.Ct. 1544, 137 L.Ed.2d 718.

Our review of case law in Ohio and other jurisdictions has failed to reveal any court that has viewed the shackling of a defendant during trial as a structural error, and appellant cites no authority. To the contrary, the United States Supreme Court has confirmed that harmless error analysis applies to the use of physical restraints on a criminal defendant at trial. *See Deck v. Missouri* (2005), 544 U.S. 622, 635, 125 S.Ct. 2007, 161 L.Ed.2d 953. In addition, numerous Ohio courts, including this court, have applied harmless error to such cases. *See, e.g., State v. Mitchell,* Williams App. No. WM–05–004, 2006–Ohio–5117, at ¶ 12; *Cardinal, supra,* at ¶ 34; *State v. Garrett,* Richland App. No. 03–CA–49, 2004–Ohio–2231, at ¶ 41; *State v. Bizzell* (Sept. 29, 2000), Montgomery App. No. 18055; *State v. Curry* (Sept. 30, 1997), Scioto App. No. 95CA2339; *Tyree, supra.* Other jurisdictions have also found that the use of restraints in the courtroom is not a structural error and is subject to harmless error. *See, e.g., Yglesias v. State* (Tex.App.2008), 252 S.W.3d 773, 777 (the trial court abused its discretion in ordering the defendant to be shackled during trial, but it did not commit structural error, and a harm analysis is appropriate); *State v. Shoen* (Minn.1999), 598 N.W.2d 370, 377 (an error involving improper restraints is not per se a structural defect affecting the framework of trial, and is thus amenable to harmless error analysis). For these reasons, we find any error in shackling a defendant during trial is not a structural error. Therefore, appellant's first assignment of error is overruled.

*State v. Chester*, 2008 WL 5265860, at *2-5.  Again, the findings of the state appellate court are presumed to be correct. This Court does not grant habeas corpus relief unless the state court unreasonably applied or contravened federal law, as determined by the United States Supreme Court, or its decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d), (e).

The state appellate court denied Petitioner's claim on the basis that any error was harmless.  The issue before this Court, then, is whether that decision was unreasonable so as to

warrant federal habeas corpus relief.  Petitioner argues that the state appellate court improperly concluded that any error was harmless, and in support has attached a transcript of proceedings before the trial court dated July 16, 2008, which apparently took place while his case was pending in the Ohio Court of Appeals.[2]  That transcript indicates, *inter alia*, that defense counsel inquired during *voir dire* as to whether potential jurors would hold it against Petitioner if he testified on his own behalf while shackled.  *Transcript, Petitioner's Exhibit B-4; B-32*.[3]  "[T]he voir dire. . . does contain some back and forth with the defense attorney and the jury about Mr. Chester being in handcuffs."  *Id.* PageID #13.  The fact that defense counsel discussed the issue during *voir dire*, is insufficient to rebut the presumption of correctness afforded to the state appellate court's factual finding that the record fails to indicate that the jury actually viewed Petitioner being handcuffed or shackled during trial.

Moreover, the United States Court of Appeals for the Sixth Circuit, under which this Court is bound, has concluded that any error in the shackling or use of handcuffs during trial is subject to harmless error analysis.  *Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005)(*citing Deck v. Missouri*, 544 U.S. at 635 (internal citation omitted)).  In reaching this conclusion, the Sixth Circuit referred to the Supreme Court's decision in *Deck v. Missouri,* which held "that the Constitution forbids the use of visible shackles during the penalty phase [of a capital trial], as it forbids their use during the guilt phase, unless that use is justified by an essential state interest - such as the interest in courtroom security - specific to the defendant on trial." *Lakin v. Stine*, 431

---

[2] The Court presumes that such transcript was made a part of the record on appeal, and Respondent does not indicate to the contrary.  The transcript indicates that defense counsel had filed a motion to clarify, for the Court of Appeals, whether the trial court should have conducted a more lengthy hearing on whether to shackle or handcuff Petitioner during trial.  Jennifer Rausch, the assistant prosecuting attorney who prosecuted the case, testified that, prior to *voir dire,* she and defense counsel spoke with the trial judge regarding their mutual concern that Petitioner would act out during trial.  *See Transcript, July 16, 2008, Petitioner's Exhibits*.  Defense counsel, however, denied that he had expressed any safety concerns, stating he objected to the use of restraints.  *Id*. PageID #32.
[3]  The transcript of *voir dire* proceedings is not a part of the record before this Court.

F.3d at 962 (citing *Deck v. Missouri*, 544 U.S. at 623 (citing *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986) and *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970)).

Citing "deep roots in the common law," the Supreme Court held that "[t]he answer is clear: The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Id.* at 2010. The Court further stated that it is clear that this Court's prior statements gave voice to a principle deeply embedded in the law. We now conclude that those statements identify a basic element of the "due process of law" protected by the Federal Constitution. Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.

*Id.* at 2012.

The Court concluded that "[t]he routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives." *Id.*

Notwithstanding the constitutional rule, the Court noted that there will be cases "where these perils of shackling are unavoidable." *Id.* at 2014 (citation omitted). The Court did not "underestimate the need to restrain dangerous defendants ... or the need to give trial courts latitude in making individualized security determinations," but given shackles "prejudicial effect, due process does not permit the use of visible restrains if the trial court has not taken account of the circumstances of the particular case." *Id.*

In *Deck* itself, the Supreme Court applied these principles and rejected Missouri's argument that the trial judge acted within his discretion. *Id.* at 2015. This argument, the Court wrote, "founders on the record's failure to indicate that the trial judge saw the matter as one calling for discretion. The record contains no formal or informal findings." *Id.* The absence of findings, according to the Court, does not meet the "case-by-case determination" that the due process clause requires. *Id.* Notwithstanding, the Court hypothesized that there might be "an exceptional case where the record itself makes clear that there are indisputably good reasons for shackling." *Id.*

> Finally, the Supreme Court held that "the defendant need not demonstrate actual prejudice to make out a due process violation." *Id.* Instead, harmless error analysis applies-that is, "[t]he State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.' " *Id.* (second alteration in original) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

*Lakin v. Stine,* 431 F.3d at 962-63. Here, as discussed by the state appellate court, any error was harmless in view of the overwhelming evidence of guilt.

> Assuming that the jurors may have seen petitioner's leg shackles, petitioner would nevertheless not be entitled to habeas relief because any error would have been harmless in light of the overwhelming evidence against petitioner. The shackling of a defendant is harmless error if there is overwhelming evidence of the defendant's guilt. *See Lakin v. Stine,* 431 F.3d 959, 966 (6th Cir. 2005); *See also Robinson v. Gundy,* 174 Fed. Appx. 886, 893 (6th Cir. 2006).

*Colbert v. Harry*, No. 2:09-cv-13736, 2011 WL 609236, at \*5 (E.D. Mich. Dec. 7, 2011).

Claim two is without merit.

**Claim Three:**

In claim three, Petitioner asserts that his conviction was obtained by use of his coerced confession. Petitioner contends that police psychologically overbore his will, and that he continued to say "no" in regard to agreeing to speak with police after *Miranda* warnings were given. *Petition*, at 4. Additionally, Petitioner complains that he gave a statement to police upon being promised he would be safely housed while at the county jail. The state appellate court rejected this claim as follows:

> Appellant argues in his second assignment of error that the trial court erred in denying his motion to suppress his statements. The standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9. This is a highly deferential standard of review because, in a hearing on a motion to suppress

22

evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, citing *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. If there is competent and credible evidence supporting the trial court's findings, the reviewing court must independently determine as a matter of law whether the trial court met the applicable legal standard or standards. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.

In the present case, appellant argues that the trial court should have suppressed his statement to police because his waiver of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694, was not knowing, voluntary, and intelligent. Pursuant to *Miranda*, a suspect in police custody must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id.*

A suspect may waive his *Miranda* rights, but the government has the burden of demonstrating that the waiver was knowingly and voluntarily made. *Id.*, at 475. A proper waiver of *Miranda* rights is not a matter of form; rather, the question is whether the defendant knowingly and voluntarily waived his rights. *State v. Scott* (1980), 61 Ohio St.2d 155, 400 N.E.2d 375, following *North Carolina v. Butler* (1979), 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286. Thus, in order to effectuate a valid waiver of one's *Miranda* rights, two requirements must be met: (1) the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410.

To meet the first aspect of a voluntary waiver, the waiver must be non-coercive. A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive

police conduct. *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus. The second aspect of the waiver test is whether the waiver was made with full awareness. *Id*.

Determining whether a valid waiver of *Miranda* rights occurred requires a consideration of the totality of the circumstances surrounding the interrogation as to whether statements were made knowingly and voluntarily, and whether defendant decided to forgo his rights to assistance of counsel and to remain silent. *Fare v. Michael C.* (1979), 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197. Voluntariness factors to consider include: the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *State v. Twyford* (2002), 94 Ohio St.3d 340, 360, 763 N.E.2d 122, citing *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus. There must be some evidence of coercion on the part of the police in order to trigger an analysis of the totality of the circumstances. *Dailey, supra*, at 91–92, 559 N.E.2d 459, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473. Coercive police activity is a necessary predicate to the finding that a suspect involuntarily waived his *Miranda* rights and voluntarily confessed. *Connelly*, at 167. Absent evidence that a suspect's will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct, a suspect's decision to waive his *Miranda* rights and confess will be deemed to be voluntary. *Culombe v. Connecticut* (1961), 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037.

In the present case, appellant claims the police tactics were successful in psychologically overbearing appellant's will. Appellant claims he was reticent from the beginning of the interview, said he did not want to speak until the interviewer spoke to another detective about his prior work as an informant, stated he was not going to sign anything, continued to say "no" to the interviewer even after *Miranda* warnings were given, was talked out of saying "no," and requested to be read his rights again only a few minutes after they had already been read to him.

After reviewing the interview between appellant and Detective Guy Patete, we find appellant's statements to police were voluntary and knowing. Appellant began the interview by stating "[i]t don't matter to me." Then he stated:

* * * Before I say anything, I need somebody to call Detective Dan McGahhey from homicide and let him—let him tell you what I

done for him, so wherever they take me to, whatever jail they take me to, they can house me properly. Before I can say anything, I need that to happen.

* * *

I need somebody be aware of it for when we go to the jail. I'm not talking until that happens.

Apparently, appellant had worked as an informant for McGahhey in another case, and appellant claimed McGahhey told him that he should contact McGahhey if he were ever arrested so that precautions could be taken for his safe imprisonment.

After Patete and appellant discussed McGahhey at length, Patete then asked appellant, "[a]re you going to talk to me or not?" Appellant replied he would talk if Patete would contact McGahhey. Patete replied he would call McGahhey and tell him what was happening after they "t[ook] care of what's going on here at headquarters[,] * * * [b]ut right now I'm not going to do anything because I want to figure out—I want to hear your side of what's going on here."

At this point, Patete told appellant he was going to read him his rights, and then stated, "[y]ou can answer questions; you cannot answer questions," to which appellant replied "I'm not signing nothing." Patete replied, "[i]t's up to you." Appellant then said again, "I'm not answering your questions. I'm not signing nothing and no tape recorder, so read me my rights." Patete replied "Okay," and asked appellant to stand up. Appellant then talked about contacting McGahhey again so that appellant would not have any problems in jail. Patete again assured appellant that he would contact McGahhey after they were done. After assuring appellant it was not a problem to contact McGahhey, Patete stated, "[a]ll right. All right. This is a constitutional rights waiver I'm going to read to you, okay? I'm going to get a little background here from you real quick." Patete then asked appellant a few questions regarding his ability to read and write, whether he was under the influence of any drugs or alcohol, and whether he had any impairments before reading the constitutional rights waiver form to appellant. After Patete read appellant his rights, appellant replied that he had read and been read his rights, he understood his rights, he did not want a lawyer at that time, he was willing to answer questions, he knew what he was doing, no promises or threats had been made, and no pressure had been used against him. Appellant then signed the waiver of rights form.

25

At the hearing on the motion to suppress, Patete testified that he did not threaten or coerce appellant in any way during the interview. Patete stated that appellant never indicated during the course of the interview that he wanted to stop talking or obtain a lawyer.

The first three-quarters of the interview consisted mostly of appellant's pleas for Patete to contact McGahhey. At no point during this period did appellant seek to stop the interview or request an attorney. To the contrary, as indicated above, appellant specifically stated that he would speak with Patete if Patete would agree to contact McGahhey. Patete agreed to contact McGahhey after he and appellant were finished talking. When Patete brought up the waiver of rights form, appellant stated he would not sign anything and he would not answer his questions. Thus, this appears to be the critical point of the interview for determining the voluntariness of the statement.

Immediately after telling Patete that he would not sign anything and would not answer his questions, appellant stated "so read me my rights." Initially, we note that, contrary to appellant's claims upon appeal, appellant had not yet been read his rights prior to his statement "so read me my rights." Notwithstanding, a plain reading of the conversation suggests that appellant requested to have his rights read to him, and he subsequently waived them after being so informed. At no time after Patete informed appellant of his rights did he explicitly ask to stop the interview or request an attorney. Although appellant did say he was not going to answer any of Patete's questions, it appears that appellant's statements in this respect were based on his desire for Patete to first speak to McGahhey. After Patete reassured appellant that he would speak to McGahhey, appellant signed the waiver of rights. Patete's assurances, in this regard, were not coercive. An investigator's offer to help if a defendant confesses is not improper. *State v. Chase* (1978), 55 Ohio St.2d 237, 378 N.E.2d 1064. Furthermore, after stating he was not going to answer anymore questions, it appears from the transcript that appellant was the one who initiated further conversation with Patete, telling the detective that he was not going to run away from the situation and that he wanted to get it resolved. It was after appellant made these statements that Patete assured appellant he would contact McGahhey, and appellant waived his *Miranda* rights. The transcript reveals no hesitation or reluctance on behalf of appellant during the reading of his rights or his signing of the waiver form. There is nothing in the record to suggest that the wavier was anything other than appellant's free and deliberate choice.

26

> In addition, the other circumstances surrounding appellant's statements do not reveal any of the indicators of involuntariness enunciated in *Edwards, supra*. Appellant's age did not impact his statement, he had a college degree, he had prior criminal experiences, the interview at issue was no more than one hour, Patete noted that appellant had been cooperative, there is no indication in the transcript that the interview was unusually combative or intense, there was no evidence of physical deprivation or mistreatment, and Patete never threatened appellant. Also important is that, contrary to appellant's claims herein, there is no evidence in the record that he continued to say "no" to Patete after *Miranda* warnings were given.
>
> Accordingly, we find the state satisfied its burden to demonstrate appellant's statement was voluntary and knowing. Lacking evidence that appellant's will was overborne and his capacity for self-determination was impaired because of any coercive police conduct, we find appellant's decision to waive his *Miranda* rights was voluntary. Appellant's second assignment of error is overruled.

*State v. Chester,* 2008 WL 5265860, at *6-9.

The magistrate judge has reviewed the transcript of the waiver of Miranda rights portion of the interrogation, Trial Transcript, pp. 25-37, Doc. 19-3, PageID 403-15. The Ohio Court of Appeal's factual findings are entitled to a presumption of correctness that Petitioner has not rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Further, the Court of Appeal's decision was not an unreasonable application of clearly established federal law; consequently, its finding that Petitioner's confession was not taken in violation of *Miranda* is binding on this court. 28 U.S.C. § 2254(d). Consequently, Claim Three is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that the petition for writ of habeas corpus be **DENIED** and that this action be **DISMSD.**

**Procedure on Objections:**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge
